UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERT NILE BROWN, | Case No. 1:19-cv-01706-HBK |
| Plaintiff, | OPINION AND ORDER TO REMAND CASE TO COMMISSIONER[2] |
| v. | (Doc. No. 17) |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

Gilbert Nile Brown ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 17, 23, 29). For the reasons stated, the Court orders this matter REMANDED for further administrative proceedings.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 32).

# I.   JURISDICTION

Plaintiff filed for supplemental security income on December 21, 2015, alleging an onset date of August 30, 2000.  (AR 318-27).  Benefits were denied initially (AR 248-51), and upon reconsideration (AR 258-63).  Plaintiff appeared before Administrative Law Judge Timothy S. Snelling ("ALJ") on May 23, 2018.  (AR 137-75).  Plaintiff was represented by counsel and testified at the hearing.  (*Id.*).  On October 2, 2018, the ALJ issued an unfavorable decision (AR 119-36), and on September 9, 2019, the Appeals Council denied review (AR 4-10).  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

# II.   BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 53 years old at the time of the hearing.  (AR 146).  He graduated from high school.  (*Id.*).  He lives with his wife.  (*Id.*).  Plaintiff has no relevant work history.  (AR 146). Plaintiff testified that he has limited work history because of his seizure disorder; and he has one to two seizures per month, on average, but sometimes has four or five in a one-month period. (AR 161, 164-65).  He reported the longest he has gone without a seizure is six months, but they are unpredictable and come on without warning.  (AR 166-67).  Plaintiff is on three seizure medications but reported that the "seizures can just flare up at any time."  (AR 154-55, 163). Plaintiff testified, he has to take a one to two-hour nap, after he experiences a seizure, to recover. (AR 160-61).

# III.   STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 21, 2015, the application date. (AR 124). At step two, the ALJ found that Plaintiff has the following medically severe combination of impairments: seizure disorder versus generalized convulsive epilepsy; anxiety disorder; depression; a history of polysubstance abuse in sustained full remission; a history of possible demyelinating disease; a history of possible Parkinson's disease; and a history of soft tissue edema. (AR 125). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 126). The ALJ then found Plaintiff has the RFC

> to perform a wide range of work at all exertional levels, but [Plaintiff] has the following nonexertional limitations: [Plaintiff] cannot climb ladders, ropes, or scaffolds, but climbing ramps and stairs, stooping, crouching, crawling, and kneeling can be performed without limitation; [Plaintiff] must avoid concentrated exposure to work performed at unprotected and dangerous heights or walk on uneven terrain or work around dangerous moving machinery or swim unattended or work around deep water or cook or drive motor vehicles and he should wear a helmet at work.

(AR 126). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 130). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: dining room attendant, porter, and warehouse worker. (AR 131). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since December 21, 2015, the date the application was filed. (AR 131).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1).

Plaintiff raises the following issues for this Court's review:

    1. Whether the ALJ properly considered Plaintiff's subjective complaints;

    2. Whether the ALJ erred at step three;

    3. Whether the ALJ decision was supported by substantial evidence including "new evidence" not considered by the Appeals Council; and

    4. Whether the ALJ erred in assessing the RFC.

(Doc. No. 17 at 14-26).

## VII. DISCUSSION

### A. Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278

F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" because they are "inconsistent with the number of seizures reported to his physicians.  Furthermore, he reported to [treating physician] Dr. Thiagarajan that he had a grand mal seizure at the SSA field office but documentation from the field office notes [Plaintiff] had hand tremors.  The medical evidence shows that when stable on anti-epileptic medications, [Plaintiff] experiences fewer than his alleged two seizures per month as described in greater detail [elsewhere in the decision]."  (AR 127).

As an initial matter, the Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).  But in considering Plaintiff's symptom claims, the ALJ must specifically identify the statements he finds not to be credible, and the evidence that allegedly undermines those statements.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  "To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (noting the ALJ did not specifically identify any inconsistencies between the claimant's testimony and the record; rather, "she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination.").  Here, aside from a single statement made by Plaintiff about a particular seizure, the ALJ fails to identify any specific statements he found "inconsistent" with the medical evidence, nor does he explain how the medical evidence undermines Plaintiff's testimony.  Furthermore, as noted by Plaintiff, the ALJ failed to give clear and convincing reasons to reject Plaintiff's symptom testimony regarding the severity and frequency of his seizure disorder.  (Doc. No. 17 at 27-29).

7

First, the ALJ found Plaintiff's statements were generally "inconsistent with the number of seizures reported to his physicians," and one particular statement to his treating physician was inconsistent with field notes from the SSA office. (AR 130). In evaluating the severity of Plaintiff's symptoms, the ALJ may consider inconsistencies in Plaintiff's statements, and/or between his testimony and his conduct. *See Thomas*, 278 F.3d at 958-59; *Tommasetti*, 533 F.3d at 1039 (prior inconsistent statements may be considered). In support of this finding, the ALJ cites an alleged inconsistency between Plaintiff's statement to Dr. Thiagarajan that he experienced a "grand mal seizure" "during his intake interview" at the SSA office, and observations by the field office representative that "noted only uncontrollable left hand movements." (AR 127, 130). However, the Court's review of the longitudinal record does not support the ALJ's finding that Plaintiff reported to Dr. Thiagarajan that he had a "grand mal" seizure "during" his interview at the SSA office; rather, the treatment record indicates that he had "one [seizure] at the time of interview in social security office" without reference to the type of seizure. (AR 434). The documentation from the field office observes that Plaintiff was experiencing "an uncontrollable hand movement (left)" at the time of the interview. (AR 340). Based on the record, without more evidence as to the type of seizure experienced at the interview, the Court finds this "single discrepancy fails to justify the wholesale dismissal of Plaintiff's testimony." *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883–84 (9th Cir. 2006).

The ALJ additionally found, without identifying supporting evidence from the record, or providing explanation as to how his statements were inconsistent, that Plaintiff's statements were "inconsistent with the number of seizures reported to his physicians." (AR 130). As noted by Plaintiff, "there is no citation to evidence by the ALJ that [Plaintiff] only experience 'X seizures per month,' and/or any citation to objective evidence of record from [Plaintiff's] multiple treating specialists documenting that his seizures somehow were not occurring." (Doc. No. 17 at 29). Defendant generally argues that the ALJ "cited repeatedly to the record when he assessed and summarized the medical record, analyzed Plaintiff's subjective complaints, and contrasted subjective complaints regarding seizures and the conflicting reports regarding seizures in the medical evidence." (Doc. 23 at 20). Presumably, Defendant is referencing the ALJ's summary of

8

Plaintiff's reports to medical providers regarding his seizures, which included: his report in March 2015 that his last seizure was six weeks ago and he had five seizures since his prior appointment in December; report in October 2015 that he had one seizure two weeks before and two seizures since his last visit; report in January 2016 that he had two grand mal seizures since the December 2015 visit; report in April 2016 that he had two seizures in March and two in April; report in August 2016 that his last seizure was six week prior; report in September 2016 that his last seizure was over four months prior; and his report in July 2017 that he had three seizures since his last appointment  (AR 128-29, 397, 406, 434, 437, 460, 465, 532).  However, Plaintiff testified that he has "on average, one to two" seizures a month: "[s]ometimes I go a couple of months without [a seizure].  But sometimes I go in to like four or five in that period of one month.  It, it fluctuates in other words."  (AR 164-65).  Plaintiff also acknowledged that the longest he has gone without a seizure is six months, according to the records kept by his wife, and noted that at the time of the hearing he recently had three generalized motor seizures while hospitalized in in the Epilepsy Monitoring Unit.  (AR 166).  Based on the overall record, the Court finds the ALJ fails to explain with specificity how Plaintiff's consistent reports of seizure activity to his medical providers was inconsistent with his testimony.  *See Holohan*, 246 F.3d at 1208.  This was not a clear and convincing reason, supported by substantial evidence, for the ALJ to reject Plaintiff's symptom claims.

Second, the ALJ found "the medical evidence shows that when stable on anti-epileptic medications, [Plaintiff] experiences fewer than his alleged two seizures per month."  (AR 130). Defendant is correct that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations.  *See Tommasetti*, 533 F.3d at 1040; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (Conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits). However, the ALJ fails to cite any specific evidence in support of this finding aside from a reference to "greater detail" provided in his summary of the medical evidence.  (AR 130).  The Court's review of this evidence indicates that in March 2015, Plaintiff's treating provider noted "moderate improvement" in seizure frequency, intensity, and duration, and in July 2016 his

9

treating provider noted "significant improvement" in seizure frequency, intensity and duration. (AR 128, 397, 460). However, as noted by Plaintiff, "there is no reference in the objective record to [Plaintiff's] condition stabilizing with medication; and there is no reference to any statement by a physician that [Plaintiff] was not compliant with medication regimen, as his medication levels were continuously tested and his seizures were noted to occur 'despite compliance with medication.'" (Doc. No. 17 at 28). Moreover, the same summary of medical evidence referenced by the ALJ to support this finding also indicates that Plaintiff reported anywhere from two to four seizures in a single month *while* consistently taking his medication. (AR 128-29, 394 (reporting six seizures since last visit)). Thus, the Court finds the ALJ's rejection of Plaintiff's symptom claims because Plaintiff was "stable" on his medication and "experiences fewer than his alleged two seizures per month" due to the medication is not supported by substantial evidence. This was not a clear and convincing reason for the ALJ to reject Plaintiff's symptom claims. The ALJ must reconsider Plaintiff's symptom claims on remand.

**B. Additional Assignments of Error**

Plaintiff additionally argues that the ALJ erred at step three, that the step three finding is not supported by substantial evidence in light of "new and material" evidence submitted to the Appeals Council after the decision, and the RFC "does not reflect substantial evidence of record." (Doc. No. 17 at 14-27). Because the analysis of step three and the RFC is dependent on the ALJ's reevaluation of Plaintiff's symptom claims, the Court declines to address these challenges in detail here. The reconsideration of Plaintiff's symptom claims is particularly relevant in this case as the Listing at 11.02 is based, in large part, on the type and number of seizures experienced by Plaintiff in a certain time period. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 11.02. In addition, it is unnecessary for the Court to make any findings regarding the "new and material" evidence submitted to the Appeals Council, as it will now be part of the record considered on remand. *See Brewes v. Comm'r of Soc. Sec.*, 682 F.3d 1157, 1160 (9th Cir. 2012) (when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record which the district court must consider in determining whether the Commissioner's

decision is supported by substantial evidence). On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims and conduct a new sequential analysis considering <u>all</u> of the evidence in the record, including a reevaluation of step three, and a reassessment of the RFC and step five finding if necessary.

### C. Remedy

Plaintiff contends that the Court should remand for a payment of benefits. (Doc. No. 17 at 30). The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds in this case that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ should reevaluate Plaintiff's symptom claims, as well as all

relevant medical evidence.  If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts.  The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
2. An application for attorney fees may be filed by separate motion.
3. The Clerk shall terminate any motions and deadlines and close this case.

Dated:    February 22, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE